May it please the Court, Andrew Gray on behalf of Petitioner Jacob Onymaechi Ikeokwu. I would like to reserve three minutes for rebuttal. Mr. Ikeokwu petitions this Court for review because the Board of Immigration Appeals and the immigration judge that considered his asylum and withholding of removal claims failed to properly apply the law to the record before it. Both of the two rationales provided by the Board demonstrate this failure. First Can I ask you what relief you're seeking? Yes, Your Honor. First, we ask that this Court vacate the Board decision and remand at least with a presumption of a well-founded fear of future persecution based on a finding of past persecution. And that's how I read your brief. As I read your briefs, you seem to be seeking that relief. That is correct, Your Honor. Okay. I'm sorry. I didn't want to ---- No, that's ---- Because, and I'm interested in this procedurally. You, of course, tried to establish a fear of future prosecution before the IJ, but the burden was on you rather than on the government. That's correct. What would happen on remand if we said your client has established past persecution, therefore there's a rebuttable presumption? Run me through how you see the proceedings work. Well, if the Court remands to the Board, the Board would have to give the rebuttable presumption. Right. Under that rebuttable presumption, the government would have the burden to show a fundamental change in country conditions. Right. And I guess my question is, would there be then be a, would it be remanded to the IJ for a hearing on a change in country conditions? Do we know, I mean, I'm just trying to figure out procedurally how this works. This Court remands to the Board. Right. Right. And then the Board would have the option to resent it to the immigration judge. Yeah, they probably would have to do that because the Board can't make factual findings. That is correct, Your Honor. Yeah, and then that's, I guess that was my question, is the fundamental change in country conditions is a factual finding. That is correct. And that was not an issue before the IJ in this case. That's correct. Okay. So where did the Board go, where did the IJ or the Board go wrong with past persecution? The IJ and the Board went wrong with both of its, the Board went wrong with both of its rationales. First, despite powerful and uncontroverted evidence to the contrary, the Board found that religion and ethnicity were not one of the central reasons for the incidence of past persecution suffered by Mr. Ikeoku. Second, the Board relied on either an irrelevant or a nonexistent document to buttress its finding. Let me ask you about the document. Yes. As I understand it, your client, whose name I will mispronounce and therefore won't, had applied for CAT relief, but not asylum at a previous, on a previous occasion. That's right. In 1999, Mr. Ikeoku applied for Convention Against Torture Relief, but did not apply for withholding or asylum. Is the absence, and I understand it's not an asylum application. I'm trying to figure out whether the absence of the allegation of any of these facts of persecution is entitled to some evidentiary weight by the IJ and the BIA. It's not, you know, it wasn't a rejection of an asylum application. We're not talking about some sort of race judicata effect. But it does, it does strike me as at least unusual that somebody who is saying I'm going to be tortured when I go back to my country wouldn't mention this ethnic violence. What are we to make of that? Well, Mr. Ikeoku was counseled at the time of that hearing that he was ineligible for those forms of relief. And you'll see that in his application that he submitted, he skips question number three because he believed he was ineligible for those forms of relief and didn't want to bring up those claims. Is there a, and I guess there is not as we see this record. But it strikes me that if somebody had made a civil complaint in state court and had left out a bunch of claims, we would treat those claims as essentially having been waived at least on the record at that time. I know you contend that things may have changed. But isn't the BIA at least entitled to look at that document and say it's the kind of thing somebody would have mentioned had he thought it to be true? Yes, but the BIA did not make an adverse credibility finding here. I understand. And also, the immigration judge that considered this matter referred to a 2004 asylum application. The application that was actually in the record was in 1999. The Board of Immigration Appeals then said, as noted by the immigration judge, this didn't appear in the previous application. So I'm left to assume that it was this 1990, or this 2004 application, whereas the application that the government now brings up is a 1995, or 1999 document. I have another question since you paused. There's a danger in pausing. Your brief makes the argument that the events of your client's childhood ought to be viewed in effect through the eyes of a child rather than the eyes of an adult. Was that an argument that was made to the IJ or the BIA? No, it was not an argument that was made. We do believe that that's not a waiver, though, because he brought up all those claims. And this is just an application of an evidentiary principle that the idea of seeing claims through the eyes of a child is not a separate claim that needs to be brought up, rather something that comes through the case law. And so the Board's finding ignores the powerful evidence that Mr. Yukioku, when he was coming out of a Christian church, witnessed the murder of a friend by Hafsafalani Muslims yelling, kill the Igbos, witnessed the arson of his family's home by Hafsafalani Muslims yelling, kill the Igbos, and also suffered a knife wound by the same group of Hafsafalani Muslims. The government's only argument to the contrary is that these incidents were the result of the genocide that it characterizes as general civil strife. The government's argument is foreclosed by this court's precedent. In Sinha v. Holder, this court found that a pattern of attacks on a petitioner's ethnic group, along with ethnic slurs during the attacks, demonstrated that an IJ's finding of no nexus was not supported by substantial evidence. The evidence of ethnic motivation in Sinha is remarkably similar to the evidence of motivation here. In that case, the court rejected the very argument presented here. It held that when civil strife has a distinct ethnic slant, such that others of the same ethnicity are targeted, the argument that an individual's experiences of persecution are somehow less on account of a protected ground is illogical and has no place in the case law. It seems to me in your claim of past persecution, what's the critical fact? Is it the wound with the machete? I think that all three incidents on their own would rise to the level of persecution under the case law. So even if he hadn't been personally injured at that time, you would view this as establishing past persecution? Yes, Your Honor. The case law establishes that something like the burning of a family's home, especially through the eyes of a child, rises to the level of persecution. The government relies primarily on Lulong V. Gonzalez, which we've heard about already today. Lulong involved an individual who was in the United States at the time of ethnic riots. There was no evidence and no claim of past persecution in that case. Rather, that case was about whether Lulong could establish a well-founded fear of future persecution, given the Indonesian government's attempts to control the ethnic riots. This Court affirmed that case because the petitioner did not prove that the government was unwilling or unable to control the persecution. That unwilling or unable to control prong is not at issue here. Moreover, Mr. Ikeoku has credibly testified to incidents of past persecution. The other cases cited by the government include a decision that found past persecution and granted the petition for review, a one-paragraph decision that indicates petitioner's claims had no connection to a protected ground, and a decision where a petitioner admitted that the act may have been a random act of violence. These cases simply cannot support the government's arguments. Turning to the Board's other rationale, we've talked a little bit about the previous application, but the key fact is that the government cannot and does not point to any applicable legal ground that would warrant denial of relief on this claim. Who was it that counseled him on the previous application? In the early or the late 90s, he was counseled by an attorney, Karen Davis. Was he in fact eligible to apply for asylum at the time? Yes. I thought he had a problem with statute of limitations. He would have had a problem with the one-year bar, Your Honor. Right. But I believe that because there was a finding by the immigration judge at that time that the government had affirmatively interfered with his right to counsel, that he could have argued for tolling at that point. He didn't make those arguments. What was the allegation that the government interfered with his right to counsel? He had counsel in San Francisco, Your Honor, and he was moved to a detention facility in Eloy, Arizona. When he was in Eloy, Arizona, he had trouble using the phones and finding a time to connect with this attorney. And so the immigration judge in Eloy, Arizona, at that time, found that under Hernandez-Orantes v. Thornburg, that there was an affirmative interference with counsel, and they transferred the case and transferred Mr. Itko back to San Francisco. Is there, and I know this record doesn't get us there, but assuming that he was eligible to file an asylum application back then and chose not to, I take it's your position that he could simply file one later? Well, yes. And the BIA has found under the matter of FPR that the bar to asylum application filing is a one-year bar, and that comes in one year from the last entry into the United States. And he last entered from Mexico when he mistakenly entered Mexico and then reentered. That's correct, Your Honor. It's an aside, but I guess I get to make one today. It strikes me as a strange rule that it says you're barred from doing something if you're here, but if you mistakenly leave the country and try to come back improperly, you're not barred from doing it. But that's our case law, I think. Right. And that's actually an interpretation. That's the BIA's case law. BIA's case law and an interpretation of the statute. Right. So now he has the right to apply for asylum, which he did. That's right, Your Honor. There's no time bar. That's correct. So you think there was an invisible hand involved in all this? It's unclear to me exactly what happened in this period, Your Honor. Would you just confirm for me exactly what are you asking us to do? Well, we're asking at least to remand to the board. To write the petition, remand, and tell the board to do what? What else do we say? You say at least that he's entitled to a rebuttable presumption of a well-founded fear. Substantial evidence doesn't support the IJ's finding and the board's finding that he did not suffer past persecution. Well, I believe that there are no factual issues here and that it really is a matter of applying the case law to the facts at hand. Well, they found that he hadn't suffered past persecution, so we would have to say substantial evidence didn't support that determination. That's correct, Your Honor. Correct? Okay, then he gets the benefit of the presumption. That's right. And you're asking us to send it back to the BIA so we can evaluate whether or not the government has rebutted that presumption. That's correct, Your Honor. And that would be true for withholding as well? Yes, Your Honor. Just the higher burden. That's right. Unless the panel has further questions, I'll save the rest of my time for rebuttal. All right. Thank you. How about your partner? Does he want to say anything? Thank you, Your Honor, but no. Well, at least you didn't say you made an appearance before the Ninth Circuit. You spoke wisely and looked good on your resume. Can I please report Patrick O'Keefe on behalf of the petitioner? No. Good morning, gentlemen. We've already met, but we have not been introduced. My name is Kevin Conway, and I represent the Attorney General in this matter. The government's position on this case is that this is actually a factual determination, and as such, it requires that the substantial evidence not only support but compel a reversal of the decision by the agency, both the immigration judge and the Board of Immigration. So can we see if we can agree on what the evidence is? Because I don't think there was an adverse credibility finding in this case, was there? No, Your Honor, there was not. So the petitioner, whose name, again, I can't pronounce, testifies that as a child his village is attacked by another tribe who are saying kill people of his religion. They burn down his house. They burn down other houses in the village. They chase people out of the village, and he suffers a machete wound from them. If all of that's true, why aren't we compelled to find that there was past persecution that was at least motivated in part by religious reasons? I don't think that the government's position is that there was not any harm inflicted upon Can we go with Jacob? Jacob, the petitioner in this case. What we think opposition is is that the petitioner has not established the on-account-of problem. That's why I'm having some difficulty because his testimony, which is taken as credible, was that while these events were occurring, somebody was chanting kill the Igbos. Right. I guess we need to – well, in our brief, we did talk about the background information on Nigeria. No, I understand it's a country with civil strife. Incredible civil strife. It had been going on since 1960, apparently. But is it the government's position that his tribal status isn't one of those statuses that can serve as the basis for persecution? I think that – no, I don't think the government's position is that it could not serve as that. I just don't think that the persecution that the Hondas complained of bridges that gap between the general strife, the general civil war that's going on in the country, and a particularized threat to – I'm asking this wrong, I guess. But unlike other – Probably not. I'm just answering it wrong. No. Unlike other cases, perhaps some that we've seen this morning, where somebody doesn't make a particularized claim that they were harmed, but rather that their religion is disfavored in a country. This gentleman's house was burned down, and he was hit with a machete. Why isn't that an individualized claim of persecution? I think you're correct that it is an individualized claim of persecution. I just don't know that it gets us to the point where it bridges that – with doing so on account of his religious or ethnicity. Do you agree that it only has to be motivated in part by his ethnicity? Yes. It has to be one central reason under the Real ID Act. That's correct, Your Honor. And in this case, the testimony is, again, that while this was occurring, people were saying kill the Igbos. In one part of it, yes, that's correct, Your Honor. And I know that there was not an adverse credibility determination in this, but there are inconsistencies in the petitioner's testimony throughout, and I raise it only because it is part of the record, and I know that there was not an adverse credibility determination. But at one point he says that, not necessarily in testimony, but in applications or in affidavits in support of applications, that it was people from the north who came down. I don't recall what the name of the group is. At one point he said that his friend was shot and killed coming out of a church by the military in 1982, which is a discrepancy between his testimony. And if the IJ had made an adverse, as you say, if the IJ had made an adverse credibility finding, we'd have a different case. That's correct, Your Honor. All right. What are we to do with the reliance below, or the mistaken assumption below, that he had previously filed an asylum application? I understand counsel's representation that it was, and the immigration judge does say 2004 asylum application. I think that what the judge was referring to was that was when the asylum application was adjudicated. I know that it was filed in 1999. There was only one prior, I-589. And I-589 covers asylum of holding and cat claims, as we all know. I think that the 2004 references, that was when the immigration judge, the first time, Judge Teeters adjudicated the claim and then issued an order of removal, but deferred that order of removal. And then the case went up on appeal from that point. And then it came up here to the Ninth Circuit to review that particular claim, the cat claim. And the Ninth Circuit denied the petition for review in that case, so then it went back down to the court. And then there's a strange, I think a strange jurisdictional issue there, because at the time that the petitioner's case was remanded back to the immigration judge for a final order of removal, or to impose the final order of removal, he had already petitioned the court of appeals to review his case. Ordinarily, when a case is remanded back to the immigration judge, there is no longer a final order of removal, and that would deprive this court of jurisdiction. I don't know why that was not pursued in this case, but it doesn't appear that anybody raised the issue of jurisdiction at that time. Perhaps it is because the immigration judge, the first time, actually did find him and order him removed, but deferred. Perhaps that has some sort of different impact on this court's jurisdiction. But nonetheless, this court exercised jurisdiction over that, denied the petition for review, and the only reason that the petitioner is back before this court is because he mistakenly went across the border and self-deported to an extent. But I guess my question was, given that the IJ and the BIA seem to place some emphasis on the absence of allegations of past persecution in the prior application, which we now know was a CAT application and not an asylum application, is that sufficient reason for us just to send it back and say, get the facts right? Obviously, this court is free to take whatever action it thinks it needs to, to correct if there are any deficiencies in the record. I think the immigration judge probably found it unusual that it was an I-589 file and information that might have benefited the petitioner at the time, especially all of these issues about his past persecution would have benefited him, and that was not included. I don't know that that deprives, that gives the court a further basis to disregard his claims now, or if that gives the court a basis to remand in order for them, for the court, for the immigration judge, or for the board then, the immigration judge, to review that. So a BIA didn't invoke any kind of administrative res judicata or anything like that, did they? With regard to the Is the prior application and this current application? No, I don't think so, because the prior application was Claim of preclusion Was a CAT claim and that was, it was sent back, so So this is basically just a fresh application for asylum and withholding. Yes, that's, I think absolutely, Your Honor, because of the fact that he had that So if we conclude that on the record here substantial evidence does not support the negative finding regarding past persecution, what happens if we were to send it back? Well, I think then you would be, the board would be required to look at whatever you put into the order as far as whether or not there was a rebuttable presumption created by this, and then the board would then have to send it, as you said, back to the immigration judge for an evidentiary hearing on that to see if, and also Unchanged country conditions Or ability to relocate Ability to relocate I was going to ask you about that, and the board would have, the government would have the ability, I suppose, to say, well, if you went back and lived in Lagos or some big city, then this wouldn't be an issue. Or even in the area that's predominantly Igbo, Christian Igbo, which I believe the petitioner spent a great deal of time in anyways. Okay. But yes, it would have to be an evidentiary hearing. So ultimately it would end up back at the IJ. I believe so, and also the IJ, as pointed out in Petitioner's Brief, also would have the option of reviewing it to see if, in the exercise of discretion, does the petitioner rate asylum and or withholding of removal? Yeah. Well, that's true. That's always the case. I don't want to limit the immigration judge. No, no, no. The IJ always has the right to exercise discretion. Yes, Your Honor. When we say they're eligible for asylum. Just for our purposes, the government's position is that the past persecution claim did not meet the standard. The petitioner did not bridge the gap to show that the harms were a nexus to the on account of. But if there are no other questions, then I will rest on the brief and allow counsel to come back. Okay. Thank you. Thank you. Your Honor, I would just like to make one brief point about the substantial evidence standard. We focused a lot here on Mr. Ikeokwu's testimony, but I'd also like to point out for the Court that the government has conceded that others, that after a 1966 coup in Nigeria, thousands of Igbos were killed and that others sought refuge in the southeast of Nigeria where at least one million died of starvation. Those facts demonstrate not only that Mr. Ikeokwu suffered persecution at the time, but also that that was the general state of Nigeria at the time. How about today? Well, the record is rather sparse on the conditions today, but I would submit that Amnesty International's November report on the condition of Nigeria, along with news articles that have come out even as early as last night about people killing Christians in Nigeria, demonstrate that the conditions have not gotten much better. But that's not an issue that we may not have read the same paper. That's right. All of that could be presented before the IJ. That is correct, Your Honor. Okay.  Thank you. All right, thank you. Thank you, Your Honor. The matter is submitted.
judges: Pregerson, Paez, Hurwitz